UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>　　　　Plaintiffs,<br>　v.<br>DANA OGDEN,<br>　　　　Defendant. | Case No. 20-cv-01691-DMR<br><br>**ORDER ON MOTION TO DISMISS THE COUNTERCLAIM**<br>Re: Dkt. No. 47 |

This case arises out of a housing dispute between Relator/Counter-Defendant Thomas Grinner and Defendant/Counterclaimant Dana Ogden. Grinner brought a single claim for violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1). [Docket No. 25, First Amended Complaint ("FAC").] Ogden filed a counterclaim for breach of contract against Grinner and 50 unnamed Roe Counter-Defendants.[1] [Docket No. 43 ("Counterclaim").] Grinner now moves to dismiss the counterclaim on the basis that Ogden's allegations fail to adequately allege breach of contract. [Docket Nos. 47 ("MTD"), 54 ("Reply")]. Ogden opposes. [Docket No. 51 ("Opposition")]. The court held a hearing on February 11, 2021.

For the reasons stated below, the court grants Grinner's motion to dismiss with leave to amend.

**I.　BACKGROUND**

The allegations in the FAC are provided for context. Grinner is an elderly, disabled man with limited financial means. FAC ¶ 6. From October 2018 to May 2019, Grinner resided in the De Marcus condominium (the "De Marcus"), a three-bedroom unit, with his grandson and a live-in aid. *Id.* ¶ 7. During the relevant timeframe, Ogden owned the De Marcus and served as

---

[1] Grinner moves to dismiss the Roe Counter-Defendants. Mot. at 5. Ogden does not oppose. Opp. at 7. The court accordingly dismisses the Roe parties.

Grinner's landlord. *Id.* ¶¶ 10-11. Grinner rented his unit with a Section 8 Housing Choice Voucher ("HCV") issued by the Housing Authority of the County of Alameda ("HACA"). *Id.* ¶ 8. A landlord's participation in the HCV Program is governed by a Housing Assistance Payments ("HAP") contract. FAC ¶ 19. By signing the HAP contract, the landlord agrees to comply with the HCV Program requirements. *Id.* ¶ 20. The HCV Program sets the tenant's portion of the rent ("tenant rent") based on their income. *Id.* ¶ 17. The Program then pays the balance of the rent directly to the landlord ("HAP payment"). *Id.* The total amount paid to the landlord (the tenant rent plus the HAP payment) is the "contract rent" or "rent to owner." *Id.* ¶ 18. Under the HCV Program, the contract rent may not exceed the reasonable rent for the property, as determined by the housing agency administering the voucher. *Id.* ¶ 18.

On September 18, 2018, Ogden requested HCV Program tenancy approval for the De Marcus and proposed a contract rent of $3800 per month. FAC ¶ 21. When Ogden applied for approval, she signed a form acknowledging the HCV terms, including that "side payments" (i.e. payments outside of the contract rent) were forbidden. *Id.* ¶ 22. HCV approved a contract rent of $3339 per month for the De Marcus and prepared a HAP contract for that amount, which also authorized Grinner, his grandson, and his live-in aide as residents. *Id.* ¶ 23. In September 2018, Grinner and Ogden entered into a lease for the De Marcus, signing a form provided by HACA with a contract rent of $3339 per month. *Id.* ¶ 24. The HAP payment totaled $2979 per month, while Grinner was responsible for the remaining tenant rent of $360. *See id.* ¶ 31.

On the same day that Ogden signed the HAP contract and lease, she required Grinner to sign a second lease for the De Marcus in the amount of $3800 plus a $39 monthly home warranty payment. FAC ¶ 38. Grinner signed the second lease through his daughter Aisha Bailey acting as his attorney-in-fact. *Id.* ¶ 40. Grinner alleges that he acceded to the unauthorized second lease "because his disabilities, frailty and limited financial means left him little option." *Id.* ¶ 40. Grinner alleges that by signing the HAP contract and HACA lease, Ogden falsely represented to HACA that she would not charge or receive payments for the De Marcus in excess of the contract rent specified by HACA. FAC ¶ 44. From October 2018 to May 2019, Ogden allegedly charged and received payments from Grinner in excess of those approved by HACA, in violation of the


contract and lease. *Id.* ¶ 46. According to Grinner, Ogden received nearly $24,000 in HAP payments to which she was not entitled due to her false representations of compliance with the HCV Program. *Id.* ¶ 51. Grinner brought a single claim for violation of the FCA, 31 U.S.C. § 3729(a)(1).

Ogden now brings a counterclaim for breach of contract. She alleges that the parties entered into a one-year lease agreement ("Lease") under which Grinner was required to make monthly rental payments to Ogden from October 1, 2018 until September 30, 2019. Counterclaim ¶ 74. Grinner made monthly payments from October 2018 to May 2019. Ogden alleges that Grinner breached the Lease when he stopped making payments in June 2019. *Id.* ¶ 75. According to the counterclaim, "Ogden performed all conditions, covenants and promises required to be performed by Ogden pursuant to the Lease." *Id.* ¶ 80. Ogden requests damages for unpaid rent, attorneys' fees and costs, and interest. *Id.* ¶ 82.

## II.     LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss a counterclaim under Rule 12(b)(6) is evaluated under the same standard as a motion to dismiss a complaint. *See AirWair Int'l Ltd. v. Schulz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III.   DISCUSSION

A claim for breach of contract must plead the existence of a contract, breach of the contract, performance or excuse of non-performance by the claimant, and damages suffered as a result of the breach. *Oasis West Realty, LLC v. Goldman,* 51 Cal. 4th 811, 821 (2011). Grinner moves to dismiss Ogden's counterclaim on the grounds that it does not adequately allege underlying facts to support each element of a breach of contract claim because Ogden fails to (1) provide a copy of the Lease or its essential terms, (2) provide underlying facts supporting a breach, (3) adequately plead the underlying facts of her performance or excuse for nonperformance, and (4) provide allegations supporting her claimed damages.

#### A.   Existence of a Contract

Grinner argues that the counterclaim does not describe with specificity the terms of the contract that were allegedly breached.  MTD at 3.  To sustain a claim for breach of contract, claimants must either attach a copy of the contract to the complaint or plead its essential terms. *McAfee v. Francis*, No. 11-cv-00821-LHK, 2011 WL 3293759, at *2 (N.D. Cal. Aug.1, 2011). Since Ogden did not provide a copy of the Lease, the court turns to whether Ogden adequately pleads the essential terms of the contract.

Under California law, an enforceable lease agreement requires a "definite agreement as to the extent and boundary of the property leased," "a definite and agreed term," "a definite and agreed price of rental," and "the time and manner of payment." *City of Santa Cruz v. MacGregor*, 178 Cal. App. 2d 45, 53 (1960) (quoting *Levin v. Saroff*, 54 Cal. App. 285, 289 (1921)); *see also Golden W. Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 30 (1994) (stating that a lease requires "a designation of the parties, a description of the premises, the rent to be paid, the time and manner of payment, and the term for which the tenant will rent the property" (internal quotation marks and citation omitted)); *Rossetto v. Barross*, 90 Cal. App. 4th Supp. 1, 5 (2001) ("A lease describes the premises, parties, rent and term.").

4

In this case, Ogden provides the names of the parties, the start and end dates of Grinner's tenancy, the timing of payment, and the address of the rental property. Counterclaim ¶ 74. However, she fails to allege the amount of rent to be paid each month. Since the rental amount is an essential term of a lease, Ogden has not adequately pleaded that Grinner breached a lease agreement. *See Smyth v. Berman*, 31 Cal. App. 5th 183, 192 (2019) (stating that "amount and time of payment of rent" are essential terms of a lease).

Additionally, the counterclaim refers to "other written agreements," but does not describe them. *See, e.g.*, Counterclaim ¶¶ 79-81. Since Ogden does not attach any other agreements or provide their essential terms, she has not adequately pleaded that other written agreements exist.

In sum, Ogden's counterclaim fails to adequately plead the essential terms of the Lease or any "other written agreements" between the parties.

### B.     Breach

Grinner argues that Ogden does not allege facts supporting a breach. MTD at 4. This argument fails with respect to the Lease. Ogden alleges that Grinner breached the Lease agreement by "terminating the lease of the subject property prior to the end of the period set forth in the Lease and failing to provide complete payment for the rental of the subject property for the contracted term." Counterclaim ¶ 81. According to Ogden, the Lease began on October 1, 2018, and Grinner should have continued to pay rent at monthly intervals until September 30, 2019. *Id*. ¶ 74. Grinner allegedly stopped paying in May 2019, resulting in nonpayment from June 2019 to September 2019. *Id*. ¶ 75. Nonpayment of rent constitutes a breach of a lease agreement. *See* Cal. Civ. Code § 1951.2. However, Ogden does not plead adequate facts to support a breach of "other written agreements."

Accordingly, the court finds that Ogden adequately pleaded a breach of the Lease.

### C.     Ogden's Performance or Excuse for Nonperformance

Grinner argues that Ogden pleads no underlying facts regarding her contractual performance. MTD at 4. The facts alleged in a complaint must contain "more than labels and conclusions." *Twombly*, 550 U.S. at 555. For the purposes of ruling on a motion to dismiss, formulaic recitations of the elements of a claim are not entitled to an assumption of truth. *Moss v.*

*U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Ogden's assertions regarding performance are conclusory:

> Ogden alleges that Ogden performed all conditions, covenants and promises required to be performed by Ogden pursuant to the Lease and/or other written agreements, except those conditions, covenants and promises that Ogden was prevented or excused from performing due to breaches of the Lease and/or other written agreements by Grinner.

Counterclaim ¶ 80. This is a formulaic recitation of the performance element and nothing more. Ogden does not provide any facts about her contractual duties under the Lease or any "other written agreements." She does not explain the extent of her obligations and whether she performed those obligations. Accordingly, Ogden's bare assertion of the third element without any factual support does not survive under Rule 12(b)(6).

## IV.   CONCLUSION

Grinner's motion is granted as to Ogden's counterclaim for breach of contract. It does not appear that amendment would be futile because Ogden could add allegations that address the deficiencies identified in this order. *See Foman v. Davis*, 371 U.S. 178,182 (1962). The counterclaim is therefore dismissed with leave to amend. Ogden must file any amended counterclaim by March 22, 2021.

**IT IS SO ORDERED.**

Dated: March 8, 2021



Donna M. Ryu
United States Magistrate Judge